UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03-20011 |
| ) | |
| CHARLES BURROWS, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Burrows' Motions for Compassionate Release (D. 58, 60) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, Defendant's Motions are DENIED.

### BACKGROUND

On February 7, 2003, a federal grand jury charged Defendant with unlawful possession of a firearm by a felon and attempted manufacture of methamphetamine. (D. 3). On September 22, 2003, he pleaded guilty to both counts. On March 4, 2004, this Court sentenced Defendant to 188 months of imprisonment on both Count 1 (firearm count) and Count 2 (drug count), to be served concurrently. (D. 22). He was further ordered to serve 5 years of supervised release on Count 1 and 6 years on Count 2, to be served concurrently. *Id*.

On March 6, 2019, he was sentenced to time served and began serving his term of supervised release. (D. 40). Unfortunately, he continued to use methamphetamine despite being placed in intensive outpatient treatment and Moral Reconation Therapy, failed to report to his probation officer, and failed to participate in substance abuse treatment as directed. (D. 43, 45, 48). On July 27, 2020, this Court revoked his supervised release and sentenced him to 27 months

of imprisonment, with no additional term of supervised release. (D. 56). The term consisted of 24 months on Count 1 and 27 months on Count 2, to be served concurrently. *Id*. at 2.

Defendant, who is 60 years old, is currently at the Livingston County Jail in Pontiac, Illinois because the Bureau of Prisons (BOP) has not yet transported him to a medical facility. (D. 60 at 2, 7). There are no cases of COVID-19 at the jail at this time. (D. 62 at 2). Defendant suffers from several medical conditions, including hypertension and Type 1 diabetes. (D. 61 at ¶ 6; D. 62 at 17). He has been prescribed various medications and is attending the wound clinic at St. Joseph Medical Center in Bloomington, Illinois. (D. 61 at ¶ 6). Defendant's projected release date is December 9, 2021. (D. 60 at 2).

On September 17, 2020, Defendant filed a *pro se* Motion for Compassionate Release. (D. 58). The Court appointed the Federal Public Defender's Office to represent him. (Text Order 9/17/2020). On September 28, 2020, counsel filed an Amended Motion for Compassionate Release. (D. 60). The Government filed its Response on October 5, 2020. (D. 62). This Order follows.

## LEGAL STANDARD

Generally, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. *See* 18 U.S.C. § 3582(c). Several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. *See* 18 U.S.C. § 3528(c)(1)(A).

Before filing a motion for compassionate release, a defendant is required to first request that the BOP file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days

have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

A court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). The policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with the policy statement." USSG § 1B1.13. The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons."

If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." A chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG § 1B1.13, cmt. n.1(A)(ii)(1).

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *United States v. Melgarejo*, 2020 WL 2395982, at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy

3

the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

## DISCUSSION

Under section 3582(c)(1)(A), a defendant can file a motion for compassionate release after requesting the warden of his facility to bring such a motion on his behalf. If 30 days pass without a response, a defendant can file a motion in court. *Id*. Since COVID-19 has wreaked havoc on this country, many federal judges, including those in the Central District of Illinois, have considered whether to waive the exhaustion requirement. Some judges have found that they have the discretion to waive the 30-day requirement in light of the serious risks associated with COVID-19. *See e.g. United States v. Anderson,* 2020 WL 2521513 (C.D. Ill. May 18, 2020).

Defendant admits that he has not exhausted his administrative remedies, but he argues that this Court should waive the exhaustion requirement. (D. 60 at 2-4). Defendant states that it is impossible for him to exhaust his administrative by making a request to the warden because he is still at the Livingston County Jail awaiting transfer to a BOP facility. *Id*. at 2. In other words, there is no warden to submit a request to.

This Court must determine whether to waive the exhaustion requirement. In *United States v. Smith*, a district court granted a motion for compassionate release before the defendant was taken into BOP custody. *United States v. Smith*, No. 09-CR-20014 (C.D. Ill. May 28, 2020). In that case, the defendant was in the custody of the Illinois Department of Corrections waiting to be transferred to a BOP facility when the Court ruled on his motion for compassionate release. The Court stated:

> [R]equiring Defendant to wait until his arrival at a BOP facility in order to submit a request for compassionate release would, at best, result in delay and possible exposure to COVID-19 while his request is processed. At worst, Defendant would be transferred to another facility within the 30-day review period, creating a real possibility that any administrative remedy would be effectively unavailable to him until it is too late.

*Id*. at 4. *See also United States v. Schneider*, 2020 WL 2556354 (C.D. Ill. May 20, 2020). Under the circumstances in Burrows' case, the Court finds that it has the authority to waive the 30-day requirement under 18 U.S.C. § 3582(c)(1)(A) and will address the motion on the merits.

The Court has considered the applicable § 3553(a) factors, and they do not favor a sentence reduction. Defendant was sentenced in July 2020 in the midst of the COVID-19 pandemic. He has only served approximately two months of his sentence for violating the terms of his supervised release. He has had numerous prior violations of state and federal supervision, which demonstrates a lack of willingness to comply with the conditions of his release.

Defendant is medically compromised and wheelchair bound, which is especially problematic because he does not have a viable release plan. If released, he might be able to participate in an inpatient treatment program at a facility in Champaign, Illinois. (D. 63). He is currently on the waitlist. *Id*. According to the United States Probation Office, the proposed release plan is unsuitable because the inpatient treatment program is only a temporary placement, not a stable residence. *Id*. Following completion of the program, Defendant would reside with his girlfriend in Allerton, Illinois. (D. 61 at 2). This release plan is also problematic because she and the person she resides with have extensive criminal records. *Id*. Additionally, Defendant was residing with his girlfriend when he began using methamphetamine again while on supervised release, which ultimately led to his revocation. *Id*. at 3.

Based on this Defendant's extensive criminal history and characteristics, the Court finds that the requested sentence reduction is not warranted under the applicable Section 3553(a)

factors. It appears that the Livingston County Jail is addressing his medical needs and that he will soon be transferred to a BOP medical facility.

## CONCLUSION

Defendant's Motion for Compassionate Release [58] and Amended Motion for Compassionate Release [60] are DENIED.

ENTERED this 5th day of November, 2020.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge